IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2015

**KEVIN LEE JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Bedford County
No. 17807     F. Lee Russell, Judge**

---

**No. M2014-01575-CCA-R3-PC – Filed May 1, 2015**

---

Petitioner, Kevin Lee Johnson, was convicted of being a habitual motor vehicle offender, driving under the influence, and felony failure to appear, for which he received an effective sentence of nine years, six months to be served in the Tennessee Department of Correction. He filed a petition for post-conviction relief alleging, *inter alia*, ineffective assistance of counsel for failing to provide him with a copy of the order declaring him to be a habitual motor vehicle offender. The post-conviction court denied relief, and petitioner presents the same issue on appeal. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Brian Christopher Belden, Shelbyville, Tennessee, for the appellant, Kevin Lee Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert James Carter, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts

A.  Trial Proceedings

On direct appeal from his sentence, this court summarized the procedural history of this case and the facts underlying petitioner's guilty plea as follows:

On March 7, 2013, the defendant entered an open guilty plea to the charges of being a motor vehicle habitual offender ("MVHO"), a Class E felony, driving under the influence ("DUI") first offense, a Class A misdemeanor, and failure to appear in court, a Class E felony. The trial court sentenced the defendant as a Range II offender to serve three years and six months for the MVHO offense, eleven months and twenty-nine days for the DUI offense, to be served concurrently with the MVHO sentence, and six years for the failure to appear to be served consecutively to the MVHO and DUI sentences, for an effective sentence of nine years and six months.

At the guilty plea hearing, the State offered a summary of the evidence it would use against the defendant in a trial. On January 17, 2012, Deputy Monte Moore of the Bedford County Sheriff's Department responded to a report of a suspicious vehicle. When he arrived on the scene, Deputy Moore discovered the defendant "passed out" in the driver's seat of a white Chevrolet Impala parked just off the roadway. Deputy Moore observed that the defendant was in physical control of the vehicle, as the keys were in the ignition, the vehicle was on, and the defendant had his foot on the brake.

Deputy Moore suspected that the defendant was intoxicated and asked the defendant to perform field sobriety tests. After the defendant performed poorly, Deputy Moore arrested the defendant. The defendant refused to consent to a blood or breath test. Deputy Moore then discovered that the defendant had his driver's license revoked in 2005 when the Marshall County Circuit Court declared him a habitual motor vehicle offender.

The defendant had a pre-trial motion hearing date of February 15, 2013, for the charges of DUI and being a habitual motor vehicle offender. The defendant did not appear in court at this time, and the State had a number of witnesses it could call to verify the defendant's absence.

At the conclusion of the State's proof, the defendant stated that he was not driving when he was arrested as a habitual motor vehicle offender and for DUI. He then announced that his plea was a best-interest plea.

*State v. Kevin Johnson*, No. M2013-01842-CCA-R3-CD, 2014 WL 1354947, at *1 (Tenn. Crim. App. Apr. 7, 2014), *no perm. app. filed.*

## B. Post-Conviction

Petitioner prematurely filed a petition for post-conviction relief while his direct appeal was still pending before this court. The post-conviction court dismissed the first petition without prejudice. Subsequently, petitioner filed a second petition for relief claiming ineffective assistance of counsel for failing to attack his status as a habitual motor vehicle offender or the indictment. Appointed counsel did not file an amended petition. The post-conviction court held an evidentiary hearing on the allegations contained in the *pro se* petition on July 3, 2014.

At the hearing, trial counsel testified that she represented petitioner for three months and that he was charged with driving after being declared a habitual motor vehicle offender ("HMVO") and driving under the influence ("DUI"), second offense. Because petitioner failed to show up for the appointments that he scheduled with trial counsel, she interacted with him three times at court proceedings prior to his entering a guilty plea: at the arraignment, at a status review, and on the date of disposition of the case. During those meetings, trial counsel discussed the charges against petitioner "at length." She said that petitioner's "primary concern[s]" were the length of his sentence and when he would have to report to begin serving his sentence.

Trial counsel stated that she was provided a copy of the agreed order declaring petitioner an HMVO during the discovery process. At the post-conviction evidentiary hearing, trial counsel identified the agreed order and was also shown other documents related to petitioner's prior case. Trial counsel noted that one document, dated February 9, 2005, was an order continuing petitioner's case until February 23, 2005. She also agreed that the order signed by petitioner was dated February 9, 2006, in the body of the order but that "2006" had been crossed through and "2005" had been hand-written above it and signed by petitioner's attorney. She further acknowledged that the circuit clerk's stamp was dated February 9, 2006. Trial counsel testified that she provided a copy of the agreed order to petitioner on the disposition date. Petitioner did not contest the validity of the order. The only defense petitioner offered was with regard to the DUI charge, and he stated that "he was doing everybody a favor by taking the driver's seat that night."

Trial counsel recalled that the State extended "a very reasonable offer" during plea negotiations but that petitioner declined it because the trial court was going to order petitioner into custody immediately. For that reason, petitioner elected to have his case set for trial. Trial counsel stated that petitioner executed an acknowledgement that he was acting against the advice of counsel by rejecting the State's plea offer and that the acknowledgement specifically stated that his case would likely end in a conviction and a longer sentence than what was offered by the State. She opined that petitioner understood everything she discussed with him because "he was able to effectively communicate with [her]."

Trial counsel explained that prior to petitioner's plea submission, he failed to appear at a hearing, thus adding the charge of felony failure to appear to his case. Petitioner subsequently entered an "open" plea, which necessitated a sentencing hearing. Prior to the sentencing hearing, petitioner was incarcerated on other charges, which provided trial counsel an opportunity to meet with petitioner in jail and prepare for the hearing. She spent approximately an hour and a half with petitioner in anticipation of the sentencing hearing, during which she reviewed petitioner's criminal history with him. Petitioner never voiced a concern about his status as an HMVO. He asked trial counsel to object to two issues with regard to the presentence report: his marital status and a reference to his alleged gang affiliation.

Petitioner testified that he understood the nature of the charges against him and that trial counsel had discussed the charges with him at a court appearance. He said that on one occasion he appeared at trial counsel's office for an appointment and waited for an hour for her to arrive, but she never showed up. Thus, petitioner stated, he "didn't depend on ever going to her office . . . to see her [be]cause she wasn't there for the appointment that we set at the one time that we did set an appointment." He said that he did not schedule any further appointments.

Petitioner recalled that trial counsel presented him with plea offers from the State but that he rejected them because he had "some unfinished business . . . [including] a divorce that was coming up . . . [and] charges in Marshall County." He acknowledged that trial counsel advised him that if he chose to go to trial, he "would be given the full extent" of the potential consequences.

Petitioner denied having received a copy of the agreed order declaring him an HMVO and stated that he first saw the order "well after" his case had been completed. He said that the order "did not come in [his] investigative report . . . [and] [he] [did] not ever remember seeing it in [his] discovery." He said that when he signed the order, he was not informed that he was being declared an HMVO but that he was told that he was "signing for two years of [his] license to be revoked."

Petitioner explained that on February 9, 2005, the Marshall County trial court granted his request for a continuance because he asserted to the court that he did not think that he had garnered a sufficient amount of convictions to be declared an HMVO. He testified that he believed that the agreed order had been altered with malicious intent. He stated that his reason for challenging the order in post-conviction proceedings was that

> it states in Tennessee law that when you imbed something into an indictment under the civil laws of the post-conviction, you have a right to attack each and every element of that indictment. . . . In that indictment, it states . . . that Mr. Johnson was declared a habitual motor offender on

-4-

February the 9th of 2005. I was not declared a habitual motor offender on February the 9th of 2005. I was supposedly declared a habitual motor offender on February 9, 2006. I don't even remember that court date.

In closing, petitioner stated, "I'd like to challenge the Court to find a document that says that I was declared a habitual motor [offender] in 2006 or 2005 that has not been altered. If . . . the Court can produce this document, I'll . . . go back and do my 20-year sentence and . . . you won't hear a word from me."

On cross-examination, petitioner acknowledged that during his trial proceedings, he was aware that the State had declared him to be an HMVO but added that because he had not seen the agreed order, he was unable to discuss the matter with trial counsel. He agreed that his Bedford County offense date was January 17, 2012, that his Marshall County driving offense was May 13, 2012, and that he did not raise this issue with either attorney. He denied that either attorney showed him a copy of the agreed order during the respective legal proceedings. Petitioner admitted that when he entered his guilty pleas, the trial judges explained the consequences of being an HMVO and that he acknowledged his understanding. However, he stated that he only declared his understanding in order to have the trial court accept his open plea because trial counsel had warned him of the dire consequences of going to trial. He maintained that if one is told that he would "get hammered at trial," he would "say whatever you got to say [sic]."

Petitioner further contested the validity of the agreed order because per his understanding of the law, a three-, five-, or ten-year term must be stated in the order declaring him an HMVO, and the agreed order he signed stated no such time period. The State posited to petitioner:

Do you not recall that what happened is [trial counsel in Marshall County] was able to negotiate that they would backdate this one year so that the three years would begin in 2005 instead of 2006, ergo, instead of you having to wait now three years, you only had to wait two? Because I heard you say a minute ago under oath that you thought this document said I was going to be losing my license for two years.

Petitioner answered, "No. You're just trying to cover for your own altered document."

Upon this evidence, the post-conviction court denied relief. This appeal follows.

## II. Analysis

In this appeal, petitioner has abandoned all claims contained in his petition for post-conviction relief except that trial counsel rendered ineffective assistance by failing

to provide him with the discovery provided by the State, specifically a copy of the agreed order declaring him to be an HMVO.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner's argument, *verbatim*, is:

> Petitioner testified [that trial counsel] failed to competently represent the [petitioner] by failing to share with petitioner all of the discovery provided by the State, specifically the copy of the order declaring petitioner to be a habitual motor vehicle offender. Petitioner submits he was deprived of his constitutional right to effective assistance of counsel.

This, he claims, constituted performance by trial counsel that fell below an objective standard of reasonableness. He asserts, "But for [trial counsel's] failing to show that discovery, petitioner would have been able to make a more informed decision and to raise [the] issue with trial counsel."

The post-conviction court, having heard all of the testimony, made a finding of fact that trial counsel provided petitioner with a copy of the agreed order as part of discovery and that he received it "well before the plea acceptance hearing." This finding of fact is conclusive on appeal because, in this case, the evidence does not preponderate against it. *Berry*, 366 S.W.3d at 169. Because petitioner's entire argument rests on trial counsel's alleged failure to provide him with a copy of the agreed order, the post-conviction court's finding of fact in this regard effectively precludes a finding of deficient performance on behalf of trial counsel.

In light of this, although we are not compelled to consider prejudice, we note that petitioner has not alleged how an "informed decision" would have affected the outcome of his case. *See Carpenter*, 126 S.W.3d at 886. He has failed to assert how the alleged misinformation inured to his prejudice. Accordingly, he is not entitled to relief.

In one conclusory statement, petitioner surmises, "As it was, he did not have all the necessary information for him to make an informed decision *before the plea acceptance hearing*." (emphasis added). To the extent that petitioner attempts to argue that ineffective assistance of counsel resulted in a guilty plea that was not knowingly, voluntarily, and intelligently entered, we note that the two-part standard of *Strickland* "is

met when the petitioner establishes that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on trial." *Carter v. State*, 102 S.W.3d 113, 115 (Tenn. Crim. App. 2002) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). We emphasize first that we do not conclude that petitioner received ineffective assistance of counsel. We further note that petitioner has failed to set forth any argument whatsoever that had he received a copy of the agreed order that he claims not to have received, he would not have entered a guilty plea and instead would have insisted on proceeding to trial. To the contrary, his testimony at the evidentiary hearing was that trial counsel warned him of the perils of proceeding to trial. This contention is meritless.

## CONCLUSION

Based on the record as a whole, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE